UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OL USA LLC,

                              Plaintiff,

              -v-

MAERSK A/S,

                              Defendant.

23 Civ. 10283 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff OL USA LLC ("OL"), an American shipping and logistics company, alleges that defendant Maersk A/S ("Maersk"), a Danish shipping and logistics company, wrongfully took delivery of five OL shipping containers and refused to return them. *See* Dkt. 21 ("FAC") ¶¶ 5–18. Invoking this Court's diversity jurisdiction, OL sues for conversion. *See id.* ¶¶ 3, 33–39.

Pending now is Maersk's partial motion to dismiss OL's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies the motion.

I. **Background**[1]

    A. **Factual Background**

        1. **The Parties**

OL is a shipping and logistics company organized under Delaware law. *Id.* ¶ 3. Its sole member is OL International Holdings LLC. *Id.* OL International Holdings LLC's sole member

---

[1] The Court draws the facts in this decision principally from the FAC. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For purposes of the motion to dismiss under Rule 12(b)(6), the

is Savino Del Bene USA, Inc.—a New York corporation with its principal place of business in New Jersey. *Id.*

Maersk is a shipping and logistics company incorporated in Denmark. *Id.* Its principal place of business is also in Denmark. *Id.*

### 2. Maersk Takes Possession of the Shipping Containers

At an unspecified time in November and December 2021, five shipping containers, leased to OL, "were mistakenly delivered by a motor carrier to and accepted by a Maersk operated and controlled terminal" in Savannah, Georgia. *Id.* ¶ 5.[2] The containers were owned by Honour Lanes Shipping ("HLS"), a shipping and logistics company based in Hong Kong. *Id.* ¶ 6. When the containers were delivered to Maersk's port in Georgia, "Maersk knew that it was not the owner nor the lessor of these [s]hipping [c]ontainers." *Id.* ¶ 7.

Soon after Maersk accepted the containers, OL "sent multiple communications to Maersk alerting Maersk of the error and confirming that Maersk was neither the owner nor lessor" of the containers. *Id.* ¶ 8. Maersk ignored these communications "and made no effort to make the [containers] available to HLS or OL." *Id.* ¶ 10. "During this time, HLS was sending [OL] invoices for per diem charges." *Id.* ¶ 11. "HLS gave [OL] a brief period of time to return the [containers] without incurring costs, but because of Maersk's refusal to return the [containers], [OL] was required to pay HLS to lease the [containers]." *Id.* ¶ 12.

On or about February 27, 2022, "[a]fter nearly three months of fruitless attempts" to retrieve the containers, OL purchased the containers from HLS for approximately $32,500, "per

---

Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in OL's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The shipping containers bear the following IDs: (1) HPCU4154798; (2) HPCU4154761; (3) HPCU4154822; (4) HPCU4154777; and (5) HPCU4154756. *Id.*

HLS's insistence." *Id.* ¶ 13. OL "never would have purchased these [s]hipping [c]ontainers but for Maersk's deliberate unwillingness to relinquish possession, and did so for the purpose of mitigating its own damages." *Id.* ¶ 14. "Maersk then proceeded to use the [containers] for its own exports knowing full well that it did not own the [containers] and was not otherwise authorized to use them." *Id.* ¶ 15; *see also id.*, Ex. A (February 8, 2023 email from Maersk employee, acknowledging that Maersk was using one container "without authorization").

### 3. Maersk Returns Four of the Five Containers

In August 2022, OL took possession of two of the five containers. *See id.* ¶¶ 21–22. In February 2023, OL took possession of a third container. *See id.* ¶ 23.

In March 2023, OL wrote to Maersk, demanding the return of the remaining two containers. *Id.* ¶ 27. In April 2023, Maersk replied, claiming that its possession and use of the containers was permitted under the terms of Maersk's tariffs. *Id.* ¶¶ 28–30.

In May 2023, OL took possession of a fourth container, *see id.* ¶ 24, for which it incurred $1,910 in storage costs, *see id.* ¶ 25. The fifth container remains in Maersk's possession, with its last known location being Oran, Algeria. *See id.* ¶ 26.

### 4. Relief Sought by OL

OL here seeks injunctive relief and monetary damages. As to the former, OL seeks the return of the one container still in Maersk's possession. *See id.* at 6 (prayer for relief). As to the latter, the FAC advances four theories of damages attributable to Maersk's possession of OL's containers.

First, OL seeks reimbursement of additional payments it made to HLS—the containers' initial owners. Because OL "was responsible for returning the [s]hipping [c]ontainers to HLS after the transported goods were delivered," *id.* ¶ 9, OL "was required to pay HLS" an

unspecified sum "to lease the [s]hipping [c]ontainers" for an additional period, while the containers were in Maersk's possession, *id.* ¶ 12. In February 2022, to "mitigate[e] its own damages," *id.* ¶ 14, OL purchased the shipping containers from HLS for $32,500, *id.* ¶ 13.

Second, based on "the detention and per diem charges . . . Maersk would charge [OL] if the situation were reversed," *id.* ¶ 19, OL seeks $583,585, a figure based on the number of days each container was held by Maersk, *see id.* ¶¶ 21–24, 26. The FAC terms these damages as "grounded in equity." *Id.* ¶ 19.

Third, OL seeks "the lost profits it would have made if Maersk had timely returned the [s]hipping [c]ontainers to [OL] for reuse by [OL's] import accounts." *Id.* ¶ 20.

Fourth, OL seeks reimbursement of the $1,910 in storage costs it incurred for one of the containers Maersk returned. *Id.* ¶ 25.

### B. Procedural History

On November 22, 2023, OL initiated this action. Dkt. 1. On January 19, 2024, Maersk filed a motion to dismiss the complaint in full, Dkt. 17, and a memorandum of law in support, Dkt. 18. That day, the Court ordered OL to either amend its complaint or oppose the motion to dismiss by February 9, 2024. Dkt. 19. On February 9, 2024, OL filed the FAC. Dkt. 21. On March 1, 2024, Maersk filed a motion to partially dismiss the FAC, Dkt. 24, and a memorandum of law in support, Dkt. 25 ("Def. Br."). On March 15, 2024, OL opposed the motion. Dkt. 26 ("Pl. Br."). On March 22, 2024, Maersk filed a reply. Dkt. 27 ("Def. Reply Br.").

## II. Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.   Discussion[3]

Maersk makes two motions, each for partial dismissal. First, it argues that the FAC's claims as to the four returned containers should be dismissed for failure to plead cognizable damages. Second, it argues that the FAC fails to plead sufficient facts to justify its claim for punitive damages. The Court considers each argument in turn.

---

[3] Because the sole claim in this case arises under state law, the Court must first determine which state's law governs. A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state—here, New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497–98 (1941). Given that the locus of the events alleged in the FAC occurred in Savannah, Georgia—where Maersk took possession of the containers—there is a substantial argument that the law of Georgia should control. *Cf. GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 385–86 (2d Cir. 2006) (describing New York's interest-analysis test and noting that the "site of the tort is the controlling factor" for "conduct-regulating laws"). Both parties' briefs, however, appear to assume that New York law controls. *See* Def. Br. at 6 n.2 (incorrectly asserting that a federal court must "appl[y] the substantive law of the forum state"); Pl. Br. at 4–7 (citing only New York cases and discussing "New York law"). In general, "such 'implied consent . . . is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Environmental Eng'rs v. Tippetts-Abbet-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)). For purposes of this motion, the Court assumes New York law controls, without prejudice to either party relying on a different state's substantive law at summary judgment or trial.

### A. Damages as to the Four Returned Containers

Maersk argues that the FAC does not plead a viable theory of damages with respect to the four returned containers. This deficiency, it argues, requires dismissal of the conversion claim as to those containers. Def. Br. at 6–12.

Maersk is wrong. Even assuming *arguendo* that the measures of damages proposed in the FAC are insufficient under New York law, a plaintiff is not required to plead damages to state a claim for conversion. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006). "To prevail on a conversion claim, a plaintiff must prove that (1) a defendant has 'acted without authorization,' (2) the defendant 'exercised dominion or a right of ownership over property belonging to another,' (3) 'the rightful owner [made] a demand for the property,' and (4) 'the demand for the return [was] refused.'" *Red Hook Container Terminal, LLC v. S. Pac. Shipping Co.*, No. 19-0287, 2021 WL 5492964, at *2 (2d Cir. Nov. 23, 2021) (alterations in original) (quoting *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 514 (S.D.N.Y. 2012)).[4] Maersk does not contest that the FAC adequately

---

[4] *In re Harvard Knitwear, Inc.*, 153 B.R. 617 (Bankr. E.D.N.Y. 1993), on which Maersk relies, misstates the law. There, the bankruptcy court stated in dictum that a plaintiff must allege that he "was damaged by reason of the alleged conversion" to state a claim. *Id.* at 624. But the cases the decision cited do not support that proposition. *Meese v. Miller*, 436 N.Y.S.2d 496 (4th Dep't 1981), held that actual damages were an element of a claim for fraud, not one for conversion. *See id.* at 500. Indeed, in discussing the claim for conversion, the Fourth Department explained that such a claim has only "three basic elements," none involving damages: "(1) intent; (2) interference with his property rights to the exclusion of his rights; and (3) possession or the right to possession." *Id.* at 501. *AMF Inc. v. Algo Distribs., Ltd.*, 369 N.Y.S.2d 460 (2d Dep't 1975), similarly stated that a plaintiff alleging conversion must show "legal ownership or an immediate superior right of possession to a specific identifiable thing," and "that the defendant exercised unauthorized dominion over the thing in question"; it did not mention a pleading requirement of proof of actual damages. *Id.* at 464.

pleads these elements—and for good reason. The FAC alleges that (1) Maersk "was not the owner nor the lessor" of the shipping containers, FAC ¶ 7, and "was not otherwise authorized to use them," *id.* ¶ 15, (2) Maersk took possession of the containers and used them "for its own exports," *id.*, (3) OL sent "multiple communications to Maersk altering Maersk of the error" and demanded their return, *id.* ¶ 8, and (4) Maersk "ignored" these communications, *id.* ¶ 10, and refused to return the containers until late 2022 and early 2023, *id.* ¶ 12. That plausibly pleads a claim for conversion.

That Maersk belatedly returned these containers does not alter this outcome. "A party cannot avoid a conversion claim because it eventually returned the property in question." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014). "A claim for conversion will exist even when the deprivation is partial or temporary." *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 364 (S.D.N.Y. 2006) (citation omitted). If a deprivation is temporary, a plaintiff may recover any "loss flowing from the wrongful withholding of possession," *Silverstein v. Marine Midland Tr. Co.*, 152 N.Y.S.2d 30, 32 (2d Dep't 1956), including lost profits, *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 328 F. Supp. 3d 232, 237 (S.D.N.Y. 2018). If all else fails, a plaintiff who succeeds on a conversion claim is entitled to nominal damages. *Wood v. Fisk*, 215 N.Y. 233, 238–39 (1915) (Cardozo, J.); *see also MacGuire v. Elometa Corp.*, 592 N.Y.S.2d 730, 730–31 (1st Dep't 1993).[5]

---

[5] That the FAC does not specifically request nominal damages is irrelevant. A complaint need not include a prayer for nominal damages to preserve such a claim. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998) (court may not "preclude[] the award of nominal damages . . . if the complaint explicitly sought compensatory damages"); *see also, e.g., Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992) ("An averment of general damages is sufficient to state a claim for nominal damages."). Here, OL seeks damages "to compensate for the loss caused by Maersk's wrongful retention" of the containers, FAC ¶ 19, and the FAC's prayer for relief requests "[a]ll . . . just and appropriate relief," *id.* at 6. No more is required for OL to obtain nominal damages if it prevails at summary

At this early stage, OL has thus done all that is required—it has plausibly pled the four elements of conversion with respect to specified items of property. *See HSCM Bermuda Fund Ltd. v. Newco Cap. Grp. VI LLC*, 619 F. Supp. 3d 434, 442–44 (S.D.N.Y. 2022). Whether its theories of damages are viable does not support dismissal. *See, e.g., White v. Punita Grp., Inc.*, No. 15 Civ. 1195 (LOG), 2016 WL 1117476, at *3 (E.D. Va. Mar. 18, 2016) (rejecting argument that plaintiff's alleged damages were implausibly pled, because "a plaintiff unable to offer sufficient evidence of actual damages arising out of a conversion [may] nonetheless vindicate his or her rights by way of nominal damages"); *Bell v. Money Res. Corp.*, No. 08 Civ. 639 (BWK), 2009 WL 382478, at *5 (E.D. Pa. Feb. 13, 2009) (rejecting argument that complaint's alleged damages were implausibly pled, because plaintiff "could, if successful, recover nominal damages"); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008) (rejecting argument that complaint's alleged damages were implausibly pled, because courts routinely allow "conversion claims where there are no damages at all"). Maersk does not cite contrary authority.[6] The Court thus denies Maersk's motion to dismiss the conversion claims as to the four returned containers.[7]

---

judgment or at trial. *Cf.* Fed. R. Civ. P. 54(c) (final judgments shall "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

[6] The cases Maersk cites, Def. Reply. Br. at 2, reinforce the point, as each involves a tort that includes damages as an element. *See, e.g., Mines v. Metagenics, Inc.*, No. 22 Civ. 3789 (JEB), 2023 WL 2930557, at *7 (D.D.C. Apr. 13, 2023) (claim for breach of contract, which requires injury); *In re Canon U.S.A. Data Breach Litig.*, No. 20 Civ. 6239 (AMD) (SJB), 2022 WL 22248656, at *7 (E.D.N.Y. Mar. 15, 2022) (claim for negligence, which requires injury); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 266 (S.D.N.Y. 2009) (claims for breach of contract and fraudulent inducement, both of which require injury).

[7] Maersk, rightly, does not argue that OL's theories of damages are so clearly deficient as to deprive the Court of jurisdiction over this case. A federal court has diversity jurisdiction over a civil action between (1) "citizens of a State and citizens or subjects of a foreign state," (2) "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(2).

B.      **Punitive Damages**

Maersk separately argues that the FAC does not plausibly plead that Maersk's conduct was sufficiently egregious and willful as to justify an award of punitive damages. It asks that the prayer for punitive damages be dismissed. Def. Br. at 12–14.

As OL recognizes, this aspect of Maersk's motion is "procedurally premature." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013). "A motion to dismiss" under Rule 12(b)(6) "is addressed to a 'claim'—not to a form of damages." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010). Punitive damages are "a form of damages, not an independent cause of action." *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017); *see also Denton v. McKee*, 332 F. Supp. 2d 659, 667 (S.D.N.Y. 2004) (denying motion to dismiss as premature "to the extent it seeks to preclude certain categories of damages").

To be sure, motions to dismiss may be directed at prayers for relief where particular damages are unavailable as a matter of law. *See Doe v. Indyke*, 457 F. Supp. 3d 278, 283–85 (S.D.N.Y. 2020) (collecting cases and noting that such motions have alternatively been cast, and granted, as motions to strike under Rule 12(f)). But Maersk concedes that punitive damages are

---

As to (1), the parties are completely diverse: plaintiff OL is a citizen of New York and New Jersey, and defendant Maersk is a citizen of Denmark. FAC ¶ 3. And as to (2), even if OL proves unable to obtain the damages it seeks (including $583,585 in detention charges), that will not disturb the Court's jurisdiction, which is assessed "as of the date of the complaint." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). Federal courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). To override this presumption, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chi.*, 93 F.3d 1064, 1070–71 (2d Cir. 1996) (citation omitted). There is no basis to doubt OL's good faith in pursuing such damages here.

available for conversion. Def. Reply Br. at 10; *see also Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193, 198 (S.D.N.Y. 2018) (jury may award punitive damages "where circumstances show that the conversion was accomplished with malice, insult, reckless and willful disregard for plaintiff's rights, or by other proof evidencing the aggravated nature of the act"). Whether punitive damages are available in this case will turn on the factual record and thus cannot be resolved at this juncture. *See, e.g., Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, No. 22 Civ. 9766 (LJL), 2023 WL 4211035, at *20 (S.D.N.Y. June 27, 2023) (denying motion to strike prayer for punitive damages where such damages are not categorically unavailable); *see also Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 440 (S.D.N.Y. 2002) (motion to strike prayer for punitive damages addresses "the relief to which the plaintiffs are entitled rather than the sufficiency of the claims in the pleadings, and it would be premature to address these issues before these claims have been decided"). The Court thus denies Maersk's motion to dismiss the FAC's prayer for punitive damages.[8]

## CONCLUSION

For the foregoing reasons, the Court denies Maersk's motion to dismiss. The Clerk of Court is respectfully directed to terminate all pending motions. By separate order, the Court will schedule a date for an initial pretrial conference.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 19, 2024
      New York, New York

---

[8] To the extent Maersk seeks to preclude other theories of damages sought in the FAC, the same analysis applies, because, as Maersk concedes, the forms of damages sought in the FAC are available under New York law, Def. Reply Br. at 3–9.